No. 25-13414

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

FRAZETTA PROPERTIES, LLC,

*Plaintiff-Appellee,*

v.

VANGUARD PRODUCTIONS, LLC and JESSE DAVID SPURLOCK,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Florida

No. 8:22-cv-00581-WFJ-AEP

## APPELLANT'S OPENING BRIEF

LEIGH M. WILLIAMS LAW OFFICE, PLLC

Leigh M. Williams
Florida Bar No. 624543
1701 W. Kansas Ave.
Midland, Texas 79701
Tel. (432) 901-2141
Email: leigh@williamslegal.org

*Attorneys for Appellant [or Appellee]*
Vanguard Productions, LLC and Jesse David
Spurlock

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT OF APPELLANTS
VANGUARD PRODUCTIONS, LLC AND JESSE DAVID SPURLOCK**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellant Vanguard Productions, LLC certify that they have neither a parent corporation nor are a publicly held corporation.

Pursuant to Eleventh Circuit Rule 26.1-2(a), Appellants certify that the following persons and entities have an interest in the outcome of this action:

Frazetta Properties, LLC, Appellee

Frazetta, Alphonso Frank, Jr., Mg. Mem., Frazetta Properties, LLC

Frazetta, Heidi L., Mg. Mem., Frazetta Properties, LLC

Frazetta, Holly J., Mg. Mem., Frazetta Properties, LLC

Frazetta, William R., Mg. Mem., Frazetta Properties, LLC

Jung, William F., U.S. District Judge, Middle District of Florida

Merritt, Jack W., Attorney for Appellee Frazetta Properties, LLC

Porcelli, Anthony E., Magistrate Judge, Middle District of Florida

Spurlock, Jesse David, Appellant

Vanguard Productions, LLC, Appellant

Williams, Leigh M., Attorney for Appellants

Dated: November 17, 2025

Respectfully submitted,

LEIGH M. WILLIAMS LAW OFFICE, PLLC

By: _Leigh Williams_____
Leigh M. Williams
Florida Bar No. 624543
1701 W. Kansas Ave.
Midland, Texas 79701
Tel. (432) 901-2141
Email: leigh@williamslegal.org

## Statement Regarding Oral Argument

Appellants do not believe that oral argument would assist the court and therefore do not request oral argument in this appeal.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT     C-1

STATEMENT REGARDING ORAL ARGUMENT     i

TABLE OF CONTENTS ……………………………………………… ii

TABLE OF CITATIONS ……………………………………………… iv

STATEMENT OF JURISDICTION ………………………………… 1

STATEMENT OF THE ISSUES…………………………………………1

STATEMENT OF THE CASE ……………………………………… 2

     I.      Legal Issues …………………………………….    2

     II.      The Parties ………………………………………    5

         A.      Frazetta Properties, LLC…………………………    5

         B.      Vanguard Productions, LLC ……………………    5

            i.      Definitive Frazetta Reference……………..……    7

     III.      Statement Of The Facts…………………………..    7

     IV.      Course Of The Proceedings ………………………..    11

     V.      Standard Of Review………………………………..    19

SUMMARY OF THE ARGUMENT ………………………………    20

ARGUMENT …………………………………………………    24

     I.      Reproduction of the Images is Fair Use ………………    24

A. The First Factor Weighs in Favor of Fair Use ………….. 25

B. The Second Factor Weighs in Favor of Fair Use……….. 28

C. The Third Factor is Neutral …………………………….. 29

D. The Fourth Factor Weighs in Favor of Fair Use………… 30

II   The Book is the Third Edition of a Title
Governed By The Parties' Publishing Agreement……………….32

CONCLUSION …………………………………………………………………… 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASE LAW**                                                           **Page**

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986)…………………………………………………      19, 28

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508, 143 S. Ct. 1258 (2023) ……………………………………   26, 31

*Cambridge Univ. Press v. Patton*,
769 F.3d 1232 (11th Cir. 2014) …………....................................................... 25

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)…………………................................. 3, 4, 5, 25, 26, 32

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)……………………………………………………..    20

*Chicago Bd. of Educ. v. Substance, Inc.*,
354 F.3d 624, 2003 U.S. App. LEXIS 26451 (7th Cir. 2003)………………    30

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985)....................................................................... 5, 25, 30

*Pacific & S. Co. v. Duncan*,
744 F.2d 1490 (11th Cir. 1984)…………………………………………...    27

*Peter Letterese and Assocs, Inc. v. World Inst. of Scientology Enterprises*,
533 F.3d 1287 (11th Cir. 2008) ....................................................   3,4, 24, 28

*Stewart v. Abend,*
495 U.S. 207, 110 S. Ct. 1750, 109 L. Ed. 2d 184 (1990)…………………    24

*Trucks, Inc. v. United States*,
234 F.3d 1340 (11th Cir. 2000)……………………………………………    20
\

*Williams & Wilkins Co. v. United States*,
203 Ct. Cl. 74, 487 F.2d 1345(1973) ……………………………………    30

**CONSTITUTIONAL AND STATUTORY PROVISIONS**

U.S. Const. art. I, § 8, cl. 8……………………………………………… 2

17 U.S.C. § 101…………………………………………………………… 1

17 U.S.C. §105…………………………………………………………… 3

17 U.S.C. § 107……………………………………. 1, 2, 3, 4, 5, 12, 20, 24, 25, 31

17 U.S.C. § 501 ………………………………………………….. 11, 24

17 U.S.C. § 503……………………………………………………….33

28 U.S.C. § 1291…………………………………………………. 1

28 U.S.C. § 1331…………………………………………………… 1


**Rules**

Fed. R. Civ. P. 56(c) …………………………………………………… 19

# STATEMENT OF JURISDICTION

Frazetta Properties, LLC asserts copyright infringement claims, United States Copyright Act of 1976, 17 U.S.C. § 101, *et seq*. against Vanguard Productions, LLC and J. David Spurlock. The district court had federal question subject-matter jurisdiction under 28 U.S.C. § 1331.

On September 3, 2025, the district court entered final judgment [Dkt. 290]. On September 26, 2025, Vanguard Productions, LLC and J. David Spurlock filed Notice of Appeal [Dkt. 291]. This Court has jurisdiction of the appeal under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

1.      Whether the trial court erred in ruling that Vanguard Productions*,* LLC and J. David Spurlock's reproduction of *Death Dealer II* and *Death Dealer V* images which no longer physically exist, featured as cover art on out-of-print book covers in their reference work *Frazetta Book Cover Art – Definitive Reference* is not "Fair Use" under 17 U.S.C. § 107.

2.      Whether the trial court erred in ruling that Vanguard Productions*,* LLC and J. David Spurlock's *Frazetta Book Cover Art – Definitive Reference* is not a subsequent edition of *Frazetta Definitive Reference,* governed by the parties' publishing agreement.

## STATEMENT OF THE CASE

### I. Legal Issues

Frazetta Properties, LLC ("Frazetta Properties") alleged copyright infringement under the United States Copyright Act of 1976, 17 U.S.C. § 101, et seq., arising from Vanguard Productions, LLC ("Vanguard") and J. David Spurlock's ("Spurlock") (or together "Vanguard/Spurlock") publication of "*Frazetta Book Cover Art - Definitive Reference*" (the "Book"), a reference work focusing on the artist Frank Frazetta's art created for use as book cover art and illustrations during a thirty year span of his career.

Frazetta Properties allege copyright ownership of two original Frazetta paintings, entitled *Death Dealer II* and *Death Dealer V*, which were used as cover art for two of the book cover images reproduced in the Book. Frazetta Properties allege Vanguard/Spurlock were required to obtain their permission or pay them a licensing fee, but did not do so, infringing on Frazetta Properties' rights under 17 U.S.C. § 106, entitling them to damages.

Vanguard/Spurlock affirmatively defended, inter alia, on the grounds of fair use under 17 U.S.C. § 107.

The Copyright Act of 1976 affords copyright protection to "original works of authorship fixed in any tangible medium," 17 U.S.C. § 102(a) to "promote the Progress of Science and useful Arts," U.S. Const. art. I, § 8, cl. 8.  The Act provides

copyright owners "a bundle of exclusive rights." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985). Included are the exclusive rights to "reproduce," "distribute," and "prepare derivative works based upon the copyrighted work," 17 U.S.C. § 106(1)-(3), which serves to encourage creation and expression by ensuring that creators reap the benefits of their work rather than being exploited by others. *Google LLC v. Oracle Am., Inc.,* 141 S. Ct. 1183, 1195-96 (2021).

One who violates any of the exclusive rights of the copyright owner by using the protected work without permission or license is an "infringer" who may be held liable in "an action for . . . infringement" brought by the copyright owner. 17 U.S.C. § 501(a)-(b).

A defendant named in a copyright infringement action may avoid liability if the user demonstrate that the use of the protected work falls under the exception of the fair use doctrine provided under 17 U.S.C. § 107. This "fair use doctrine" exists to "'avoid rigid application of the copyright statute'" in circumstances where infringement liability would stifle the development of new creative works. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (citation omitted). At the same time, fair use provides no warrant to exploit a follow-on work that "merely 'supersede[s] the objects of the original.'" *Id.* at 579 (alteration in original) (citation omitted). Because fair use is an "affirmative defense," defendants "carr[y] the burden of proof" to establish it. *Peter Letterese & Assocs., Inc. v. World Inst. Of*

*Scientology Enters., Int'l*, 533 F.3d 1287, 1307 n.21 (11th Cir. 2008).

Fair use hinges on four non-exclusive factors. *See* 17 U.S.C. § 107. The first factor examines "the purpose and character of the use," *id.* § 107(1), analyzed, in part, by examining "whether the new work merely supersede[s] the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message," referred to as a "transformative" use. *Campbell*, 510 U.S. 569, 579 (citing 17 U.S.C. § 107(1)).

The second factor looks to the nature of the copyrighted work, requiring the court to consider "the protection of the reasonable expectations of one who engages in the kinds of creation/authorship that the copyright seeks to encourage." *Campbell*, 510 U.S. at 586 ("creative expression for public dissemination falls within the core of the copyright's protective purposes" and fair use is less likely to be found when the original work is highly "creative."), citing 17 U.S.C. § 107(2)).

However, where the creative work of art is being used for a transformative purpose, the second factor is accorded a limited weight due to its limited usefulness when applied to use for the purpose of emphasizing the images' historical rather than creative value. See, *Campbell*,, 510 U.S. at 586) (Second factor not "likely to help much in separating the fair use sheep from the infringing goats" concerning works using "publicly known, expressive works" in transformative manner).

The third factor focuses on the amount and substantiality of the portion of the

copyrighted work reproduced in relation to the copyrighted work as a whole. 17 U.S.C. § 107(3); *Campbell*, 510 U.S. at 586 (Quantitative and qualitative aspects of the portion of the copyrighted material taken must be examined).

The fourth factor examines the "effect of the use upon the potential market for, or value of, the copyrighted work" under 17 U.S.C. § 107(4) and is made under a two-part inquiry: (i) the market harm caused by the infringement and (ii) whether widespread use of the protected material will adversely affect the potential market for that copyrighted work. *Harper,* 471 U.S. at 568.

All four factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578.

## II.     The Parties

### A.     Frazetta Properties, LLC

Frazetta Properties, LLC holds the tangible and intangible assets of the late artist Frank Frazetta and was initially comprised of three manager-members: Holly Frazetta, Heidi Frazetta, and William Frazetta. [Dkt. 87-2, pp. 17-23]

### B.     Vanguard Productions, LLC

Vanguard Productions, LLC is an award-winning publisher of fifty-plus books, including numerous biographies of artists and illustrators whose work in graphic novels, comics, and book illustration made a tremendous impact. Seven of Vanguard titles focus on the art of Frank Frazetta, as a painter in the fantasy genre,

for which he is best known, as well as other phases of his career as artist and illustrator of comics, books, feature-length films, television programs, magazine covers, and movie posters. [Dkt. 67, p.3]

Vanguard's titles have been awarded honors such as the Rondo Awards, The New York Times, IPPY Awards, Entertainment Weekly, Eisner Awards, the Hugo Awards, Locus Awards, The Society of Illustrators, and other professional industry and media associations including National Public Radio, Time Out New York, Library Journal, Publishers Weekly, The Village Voice (*The Alluring Art of Margaret Brundage* was named in their "Best of 2013"), MTV, and ERBzine.com. [Dkt. 67, p.3]

J. David Spurlock, Vanguard's sole member, has an acclaimed fifty-plus year career as an award-winning publisher and author of Vanguard's titles as well as Random House's *How to Draw Chiller Monsters,* a top selling book. He is an associate to artists and illustrators including Basil Gogos, Neal Adams, Steranko, and Joe Kubert; and serves as Director of the Wallace Wood Estate. [Dkt. 67, p.3; Dkt. 67-1, p. 5, author bio]

J. David Spurlock was longtime friend and colleague of the late Frank Frazetta, an expert on Frazetta's life, work, and career, and has served as an expert witness in litigation, consultant, and appraiser of Frazetta's art. Dkt. 67-1, p. 5

### i. Definitive Frazetta Reference[1]

Spurlock provided the background and history of how the *Definitive Frazetta Reference* came into being, as follows:

> It is common for fans and small publishers to publish "checklists" or "indexes" cataloging the output of popular science-fiction and/or comics artists, often with very poor-quality reproductions. A quality history-related publisher like Vanguard could produce a work to Frazetta's liking under Ellie Frazetta's (Frank Frazetta's business manager and wife), supervision. Ellie agreed they would not receive royalties on the reference book, knowing that the Frank Frazetta Museum, which she managed at that time, would do very well in sales.
>
> Mutual friend Dr. David Winiewicz had met a fellow who was working on an index. Winiewicz introduced him to Frank, Ellie and myself and at Frank and Ellie's urging, Winiewicz, the indexer and I started a long road to polishing and finishing what became the first edition Definitive Reference under Ellie's close supervision.

[Dkt. 87, p. 6]

### III. Statement Of The Facts

*Frazetta Book Cover Art – Definitive Reference* ("The Book") published in 2022 by Vanguard and authored by Spurlock, is a biographical reference work of Frank Frazetta's thirty-year career (1962 through 1991) as an illustrator and creator of paintings used as book cover art. [Dkt. 67, ¶ 10; ¶ 20]

The Book, divided into six chronologically ordered chapters , contains a total

---

[1] Taken directly from Spurlock's Affidavit, Dkt. 87

187 book covers, in color, of which 180 are faithful reproductions of each book cover created by Frazetta featuring cropped versions of the larger paintings Frazetta created for use as book cover art, reproduced as originally published. [Dkt. 67, ¶ 20]

Each book cover is arranged in layouts with a caption providing the novel's title (and original title if later changed); publisher; author (and author's pseudonym if applicable); editor; date of publication; title of the Frazetta painting, and designation of any Frazetta illustration included in the novel's interior. [Dkt. 67-1]

Almost all of the book cover images have additional information about the novel, the publisher, industry award, or Frazetta's cover art. Thirty-seven covers include a quote by Frank Frazetta, and sixteen covers include a quote by artists, publishers, art directors, friends, family, authors, and other industry contemporaries of Frazetta's. The twenty-one paintings Frazetta subsequently painted revisions to are also identified.[2] [Dkt. 67-1]

The "*Death Dealer II*" and "*Death Dealer V*" images reproduced in the Book no longer physically exist - both are distinctly different from the *Death Dealer* images claimed by Frazetta Properties that are sold as poster art on the Frazetta Girls, LLC's website. [Dkt. 83-1].

"*Frazetta Book Cover Art - Definitive Reference*" includes images of "*Death Dealer II*" and "*Death Dealer V*" reproduced in the context of out-of-print book

---

[2] Dkt. 67-1: pp. 20; 37-41; 47-48; 51; 53; 56; 59; 62; 66; 69; 71; 74; 77; 81-82

covers in the same size as the original hardback and/or paperback novels. [Dkt. 67, ¶ 9; Dkt. 122, ¶ 3]

Vanguard/Spurlock claim that the Book is permitted to reproduce the Death Dealer images pursuant to the Parties' 2010 *Frazetta Endorsement & Trademark License Agreement,* in which Frazetta Properties granted Vanguard/Spurlock license to publish the reference work known as the *Frazetta Definitive Reference,* providing them unfettered "right to update, revise text, replace images, re-design and publish" the Book "as Licensee sees fit, without payment of royalties or submitting sales reports, [Dkt. 87-2, p. 18/23], which pertinent parts are as follows:

> 4. LIST OF FRAZETTA BOOKS TO BE PUBLISHED UNDER THIS AGREEMENT
>
> A. One (1) book entitled "The Definitive Frazetta Reference" by James Bond and David Winiewicz, Ph.D. (which has been previously published by Licensee). No royalties or sales reports are due Licensor or the artist Frank Frazetta on this title. Licensee has the right to update, revise text, replace images, re-design and publish this FRAZETTA Book as Licensee sees fit. Artist Frank Frazetta agrees, health permitting, to autograph the FRAZETTA Books for Licensee at a flat-fee rate of $100.00 per signature if Licensee requests, such autographing. An address for Licensor's website will be listed, as designated by Licensor, in the FRAZETTA Books.

[Dkt. 95, ¶ 4, citing Dkt. 87-2, p. 18/23 (emphasis added)]

The term of Section 4 is set forth in Section 2, providing as follows:

> 2. TERM. This Agreement shall be effective as of the date hereof, is valid in perpetuity and shall not expire, except through Licensees breach of this Agreement, including any breach by anyone for which

Licensee is responsible, which breach continues uncured for 45 days after written notice of breach from Licensor. The provisions of Sections 7 and 8 shall survive any termination of this Agreement.

[Dkt. 95, ¶ 5, citing Dkt. 87-2, p. 18; Dkt. 95-1; 95-2; 95-3; and 95-4]

Frazetta Properties' *Death Dealer V* painting differs significantly from the *Death Dealer V* featured as 1990 cover art in the Book. (Compare Dkt. 1, p. 12 to Dkt. 67-1, p. 71 Frazetta Definitive Reference, p. 138; Dkt. 87, 87-4, 87-5, Aff. Spurlock, and Dkt. 95, Aff. Spurlock).

At the time of the trial court's February 9, 2024 ruling [Dkt. 128] on the parties' respective motions for summary judgment, the only images of *Death Dealer II* and *Death Dealer V* provided by Frazetta Properties were the small low-resolution pictures included in their March 13, 2022 Complaint. [Dkt. 1, p. 12].

Spurlock demonstrates the differences between the Book's *Death Dealer II* cover and Frazetta Properties' version sold online as poster art. [Dkt. 87 Aff. Spurlock; Dkt. 87-4; 87-5], describing Frazetta Properties' *Death Dealer II* painting with the character appearing brighter on a background with a noticeably more saturated chroma. (Compare Dkt. 1, p. 12 to Dkt. 87-4 and Dkt. 67-1, p. 71).

Frazetta Properties' *Death Dealer V* is brighter and has additional details in the background and foreground; the Death Dealer character's dominant leg is depicted at a different angle, he wears less and different dorsal plate armor, has a larger head and longer left arm, isn't wearing an archer's bowguard on his wrist, is

standing taller on the ramparts, his kusarigama chain is now gold, there is now background color between his legs, the falling attacker has been given a face, and a middle attacker has either disappeared or gained a spiked helmet à la German Pickelhaube or a Mongolian Rmog (Compare Dkt. 1, p. 12, Dkt. 67-1, p. 71, and Dkt 87-5, all three of which paintings are different versions).

Frank Frazetta was well known to have painted over his original works. The historic artifact book cover published in 1990, reproduced in Vanguard/Spurlock's *Frazetta Definitive Reference* is not the same *Death Dealer V* claimed infringed by Frazetta Properties. (See, Dkt. 87, 87-4, 87-5).

Vanguard/Spurlock demonstrated that the Book neither competed with nor hampered sales of books or art prints featuring *Death Dealer II* and *Death Dealer V*:

- Taschen Books' 2020 "*Masterpieces of Fantasy Art,*" featuring Frazetta art on the cover and an entire chapter on Frazetta's art, was currently in its 40th reprinting [Dkt. 83-1, p. 8]

- Taschen Books' enormous[3] "*The Fantastic Worlds of Frank Frazetta,*" published in 2022, retailing at $200 hardcover/ $600 for the collector's edition, was almost sold out. [Dkt. 83-1, pp. 6-7]

- Sales of *Death Dealer II* and *Death Dealer V* art prints were doing well [Dkt. 83-1, pp. 1-5]

## IV. Course of the Proceedings

On March 13, 2022, Frazetta Properties, LLC ("Frazetta Properties") filed suit alleging copyright infringement under 17 U.S.C. § 501, against Vanguard

---

[3] A 468 page book, trim size 11.4 x 15.6 … Vanguard/Spurlock's Book trim size: 9 x 11

Productions, LLC ("Vanguard") and J. David Spurlock ("Spurlock") for reproducing images painted by the late artist Frank Frazetta entitled *Death Dealer II, Death Dealer V*, and *Death Dealer VI*[4] in *Frazetta Book Cover Art - Definitive Reference* (the "Book"), alleging Vanguard/Spurlock "copied the entire Protected Works and the contents of the Infringing Book contains exact copies of the Protected Works" without obtaining the required permission or agreement. [Dkt. 1, ¶¶ 9, 12]

Vanguard and Spurlock filed separate Answers denying copyright infringement as the Book is "a reference work consisting of book covers" and is fair use under 17 U.S.C. § 107, and reproduction of the *Death Dealer* images is permitted under the parties' publishing agreement [Dkt. 14, pp. 2-3, 9; Dkt. 15, pp. 2-3, 9].

On August 18, 2023, Vanguard/Spurlock submitted their motion for summary judgment [Dkt. 67] based on a 17 U.S.C. § 107 fair use defense, attaching a digital copy of the Book. [Dkt. 67-1]

On September 19, 2023, Frazetta Properties filed their motion for summary judgment [Dkt. 79] alleging numerous factually incorrect details concerning a recent state court case in which the parties litigated breach of contract claims involving a different publishing agreement and attached as exhibits uncertified copies of

---

[4] *Death Dealer VI* never appeared on a book cover – it was used as cover art for a comic book published by Verotik. [Dkt. 259-1, *2010 Def. Ref.* p. 17 (highlighted)].

registration certificates for *Death Dealer II* and *Death Dealer V* with no affidavit attesting to authenticity and demanded judgment in their favor as a matter of law.

Frazetta Properties' response [Dkt. 82] to Vanguard/Spurlock's motion for summary judgment speculated that the Book used the *Death Dealer* images for the same purpose as Frazetta – to sell books and concluded that the Book's use of the images was not transformative.

At hearing on the parties' respective motions for summary judgment, the issue of fact presented by the apparent differences between the Book's images, printed in the context of out-of-print book covers, and Frazetta Properties' versions, which were both brighter in color, and whose *Death Dealer V* contained numerous differences in the characters' appearance, was discussed, leading to the trial court granting leave of the parties to file additional affidavits. [Dkt. 86]

In his Affidavit, David Spurlock [Dkt. 87] provided an accurate account of his professional and personal relationship with the late Frank Frazetta, an accurate summary of the parties' recent state court litigation concerning an entirely different publishing agreement and stated that the Book's *Death Dealer V* image, featured as cover art on a long out-of-print book, is reproduced in the same size as the paperback (approximately 8"), significantly reduced from the 30" tall painting, and is historically accurate to the artifact (book cover) "*with some art cropped out and*

*much art hidden/deleted by the original publisher's significant text/title treatment and branding — none of which is copyright Frazetta.*" [Dkt. 87, p. 13]

The *Death Dealer V* thumbnail image in Frazetta Properties' complaint[5] is different, most likely because Frank Frazetta, well known to have painted over his original works, revised it after its initial 1990 publication. [Dkt. 87, p. 13]

Spurlock's Affidavit [Dkt. 87] continued with facts concerning his work with Ellie Frazetta, Frank Frazetta's wife and business manager, on the initial 2008 edition of the *Frazetta Definitive Reference,* complying with Ellie's permission to use the image as long as it was reproduced in the context of its use as initially published, i.e., featured on a movie poster, cover art for a book, magazine, comic book, or other artifact, never as just the image itself, so as not to compete with the Frazetta's sale of the images reproduced for decorative purposes, i.e., art prints. [Dkt. 87, p. 14]

Spurlock's Affidavit attaches a visual comparison analyzing the differences in the *Death Dealer II* [Dkt. 87-4] and *Death Dealer V* images [Dkt. 87-5].

The 2008 and 2010 editions of the *Frazetta Definitive Reference* [Dkt. 295-1] reproduced *Death Dealer II, Death Dealer IV, Death Dealer V, Death Dealer VI,*

---

5  Frazetta Properties had not produced deposit copies of the images, so Spurlock cited the art prints sold by Frazetta Girls, LLC [Dkt. 83-1, pp. 1-4].

and *Defender* in the context of historical artifacts – album covers, catalogue covers, etc., without objection from Frazetta Properties.

Vanguard/Spurlock's joint Amended Answer [Dkt. 107] was filed, adding as an affirmative defense that the Parties' publishing agreement, alleged in paragraphs 22, 54, 62 of their prior Answers [Dkt. 14; Dkt. 15] governed the dispute.

Vanguard/Spurlock's Second Motion for Summary Judgment [Dkt. 111] argued that the parties' *"Frazetta Endorsement & Trademark License Agreement"* (Part B of the 2010 Settlement Agreement) governed publication of the Book, and that the 2008 and 2010 editions of *Frazetta Definitive Reference* contain the *Death Dealer II, Death Dealer V*, and *Death Dealer VI* images in the context of historical artifacts, and that Frazetta Properties granted Vanguard/Spurlock authority to reproduce these images in that context as well as the right to revise, add, subtract, present images and text as Vanguard/Spurlock "see fit" without limitation, and that the Book was a legitimate third edition of the *Frazetta Definitive Reference*. [Dkt. 87-2, p. 18; Sec. 4 (A)].

On February 9, 2024, the court entered its Order on the parties' respective motions for summary judgment [Dkt. 128], finding in Frazetta Properties' favor.

Thereafter, the parties filed their respective briefs on damages. Vanguard/Spurlock argued that Frazetta Properties' 17 U.S.C. § 503(a) and (b) demand to impound and destroy the 2022 edition of "*Frazetta Book Cover Art the*

*Definitive Reference*" [Dkt. 131] was far too drastic a remedy – the 167 page Book of 180 Frazetta book covers, all of which are out-of-print, are historical artifacts, are mostly held in the owner's private collections, and the information in the text of the Book as to each book cover is also the only publicly available reference source for all publication information on Frank Frazetta's book cover art. [Dkt. 131, p. 5]  The book covers containing the images of *Death Dealer II* and *Death Dealer V* are only two of these rare book cover images, and destruction of the Book would result in the loss of the only reference book of its kind.

The trial court denied [Dkt. 161] Vanguard/Spurlock's motion to reconsider [Dkt. 154] the summary judgment ruling [Dkt. 128], holding that FRAZETTA PROPERTIES was not required to submit a certified copy of their registration certificates to prove copyright registration.

Frazetta Properties moved for attorney's fees and costs [Dkt. 156] seeking $34,527.00 for hours and costs [Dkt. 159]. Vanguard/ Spurlock again objected to an award of damages in the absence of Frazetta Properties submitting certified deposit copies of the *Death Dealer II* and *V* images claimed copyrighted. [Dkt. 160]

David Spurlock filed an affidavit concerning the Book's profits [Dkt. 162] showing sales totaling $91,299.00, less expenses of $68,893.77 resulted in a net profit in the amount of $22,405.05. The sales and profits are small because the

reference work appeals to a niche market – galleries, auction houses, appraisers, art historians and educators, and fans.

The prior two *Definitive Reference* editions featured the *Death Dealer II*, *Death Dealer V*, and *Death Dealer VI*[6] images and a chapter on Frank Frazetta's book cover art, but the Third Edition of the *Definitive Reference*, an expanded, revised edition focusing on Frank Frazetta's book cover art, is the only catalog and survey of Frank Frazetta's book cover art in an annotated academic format, containing numerous copies of out of print book covers unavailable from any public source. [Dkt. 162]

The original *Death Dealer V* painting no longer exists - the art print of the *Death Dealer V* sold online is an original Frazetta painting, but it is NOT the original version created for the book cover. [Dkt. 162] Frank Frazetta added many new details to *Death Dealer V* several years after its initial publication, and the re-painted *Death Dealer V* is the one copyrighted by Frazetta Properties and marketed as the book cover version sold to the public. [Dkt. 162]

*Frazetta Book Cover Art - Definitive Reference* is sold by The Frazetta Museum, originally built and operated by Frank and Ellie Frazetta [Dkt. 162], now owned and operated by Frazetta Properties member Frank Frazetta, Jr, carried the prior editions of the *Definitive Reference* and currently sells *Frazetta Book Cover*

---

6  They also contain *Death Dealer IV* and *Defender,* copyrighted by FRAZETTA PROPERTIES.

*Art - Definitive Reference* [Dkt. 162] in its gift shop and online: https://www.frazettamuseum.com/products/deluxe-frazettabook-cover-art.

*Frazetta Book Cover Art - Definitive Reference* is the only first and only reference work of its kind. [Dkt. 162]

On April 19, 2024, the trial court canceled the hearing on damages [Dkt. 165] and ordered Frazetta Properties to produce certified registration certificate, certified registration application, certified recordation of transfer of copyright ownership of the *Death Dealer* images. [Dkt. 166]

On June 26, 2024, Vanguard/Spurlock filed a USCO certified deposit copy of *Death Dealer V* [Dkt. 173-1], copyright registration [Dkt. 174-1]; E-File Application [Dkt. 174-2][7]; and Application Template. [Dkt. 174-3]

On June 28, 2024, Frazetta Properties filed certified copies of *Death Dealer II* and *Death Dealer V* [Dkt. 175-1] registrations and deposit copies.

On March 31, 2025, Frazetta Properties submitted the eFile Application for *Death Dealer II*, coming into full compliance with the trial court's April 19, 2024 Order [Dkt. 166] to produce certified copies of *Death Dealer II* Copyright Office records. [Dkt. 217]

---

7  VANGUARD/SPURLOCK later filed a full copy of *Death Dealer V'*s E-File Application [Dkt. 193]

The trial court entered its final order [Dkt. 289] granting Frazetta Properties' Motion for Attorney Fees [Dkt. 285], ordering Vanguard/Spurlock to pay Frazetta Properties $68,784 in fees, $9,170.61 in costs, $20,000 in statutory damages, and post-judgment interest, permanently enjoined them from further infringement of Frazetta Properties' copyright in *Death Dealer II* and *Death Dealer V* and ordered the destruction of remaining inventory of materials that contain infringing instances of *Death Dealer II* and *Death Dealer V*.

On September 3, 2025, Judgment [Dkt. 290] in favor of Frazetta Properties LLC and against Vanguard Productions, LLC and David Spurlock was entered.

On September 26, 25, 2025 [Dkt. 291], Notice of Appeal was filed by David Spurlock and Vanguard Productions, LLC.

### V.      Standard Of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure material on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment must identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255; *Trucks, Inc. v. United States*, 234 F.3d 1340, 1342 (11th Cir. 2000). Summary judgment may be granted only when "there is no genuine issue as to any material fact," and "the moving party is entitled to a judgment as a matter of law." *Id.*; *see* Fed. R. Civ. P. 56(a). The Circuit Court of Appeals reviews de novo a district court's application Rule 56(a). *Trucks, Inc. v. United States*, 234 F.3d 1340, 1342 (11th Cir. 2000).

## SUMMARY OF THE ARGUMENT

The district court erred in the interpretation and legal analysis of the four fair use factors of 17 U.S.C. § 107 as applied to the record facts.

The trial court determined the first factor, the purpose and character of the use, under a too-limited analysis of the size of the *Death Dealer* images and the brevity of captions in the Book instead of examining the images in the context of the entire Book, a thoroughly researched biographical reference containing all 180 book

covers featuring Frazetta's cover art. Viewed in a vacuum, the trial court concluded the images were larger than necessary and the caption's content "*relays little in the way of education*" [Dkt. 128, p. 28] to be a transformative use.

The district court did not address a crucial fact - that the Book's *Death Dealer* images are faithfully reproduced historical artifacts - out of print book covers featuring *Death Dealer* images which no longer physically exist – a material fact critical to a proper legal analysis of the first factor.

The district court performed a less than full analysis of the second factor, the nature of the copyrighted work, which factor is determined by balancing the protection of the copyright owner's reasonable expectations of the use of its creation with society's need for use of the work in furtherance of education, commentary, and critique. The transformative purpose of the Book's use of the *Death Dealer* images as historical artifacts were clearly not for the same decorative purpose as Frazetta Properties.

The district court's analysis of the third factor, the amount and substantiality of the portion used in relation to the copyrighted work as a whole, concluded that this factor was neutral, finding that the reproductions of the originally first-published *Death Dealer* versus the overpainted *Death Dealer* images was not a factor tipping the scale one way or another as to fair use.

The district court erred in its analysis of the fourth factor, the effect of the use upon the potential market for or value of the copyrighted work, as (i) the historic *Death Dealer* images reproduced in the Book as book cover art, displayed in the same size as the book covers, do not serve as a substitute for Frazetta Properties' sale of larger, poster-size prints of the *Death Dealer* images nor impair their ability to license the images for commercial use; and (ii) widespread use of the historic *Death Dealer* versions is not practicable, as the images exist only as they appear on the book covers – with text and publisher information, and in the cropped form used by the publishers -  and are unavailable to the public.

The use of these historic, less colorful versions, if any, will not adversely affect the potential market for Frazetta Properties' *Death Dealer* versions, evidenced by tremendous sales of Taschen Books' higher priced 2020 Frazetta career retrospective, and in light of the fact that Frazetta Properties demonstrated no evidence to the contrary.

The district court erred in concluding that the Book is not a third edition of the *Frazetta Definitive Reference* because it is limited to Frazetta's book covers, the subject of a chapter in the prior two editions.

The terms of the parties' 2010 "*Frazetta Endorsement and Trademark License Agreement*" ("the Agreement") authorize Vanguard/Spurlock to publish future editions of the *Definitive Frazetta Reference* in perpetuity, with no limits on

updating the information, revising the text, replacing images, or re-designing the work as Vanguard/Spurlock "sees fit." [Dkt. 87-2, p. 18; Sec. 4 (A)].

Vanguard/Spurlock published, co-authored, and co-edited the 2008 edition, entitled "*The Definitive Frazetta Reference*" and the 2010 edition, now entitled "*Frazetta – the Definitive Reference*," and authored and edited the 2022 edition, entitled "*Frazetta Book Cover Art – Definitive Reference*," omitting much of the prior lists of works and oft-reprinted images but now reproducing 180 Frazetta book cover art in the context of the original book covers. The 2008 and 2010 editions reproduced 46 book covers featuring Frazetta paintings as cover art.

The 2008 and 2010 editions of *Frazetta Definitive Reference* reproduced Frazetta Properties' copyright registered *Dark Kingdom*, *Defender, Death Dealer II*, *Death Dealer IV*, and *Death Dealer VI* images.

The 2022 edition reproduced Frazetta Properties' copyright registered *Death Dealer II*, *Death Dealer III, Death Dealer IV*, and *Death Dealer VI* images. The 2010 and 2022 editions of the *Frazetta Definitive Reference* are part of the record and demonstrate that permission to reproduce the images claimed was clearly granted by Frazetta Properties, along with unlimited right up revise, add, subtract, present images and text and publish as Vanguard/Spurlock "see fit."

**ARGUMENT**

## I. Reproduction Of The Images Is Fair Use

One who uses a copyright protected work may defend against a claim of copyright infringement under 17 U.S.C.S. § 501 by demonstrating the use is permissible under the fair use exception of 17 U.S.C.S. § 107, providing as follows:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C.S. § 107

"Fair use doctrine is an "equitable rule of reason," and neither the examples of possible fair uses nor the four statutory factors are to be considered exclusive." *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1308 (11th Cir. 2008), quoting *Stewart v. Abend,* 495 U.S. 207, 236-37, 110 S. Ct. 1750,

1768, 109 L. Ed. 2d 184 (1990); and see, *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 577-78, 114 S. Ct. at 1170-71 (1994) (Statutory factors are not to "be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright."); *Cambridge Univ. Press v. Patton,* 769 F.3d 1232, 1259 (11th Cir. 2014) (Court's analysis is a "flexible one," and the illustrated examples under the statute are not meant to be exhaustive or presumptively fair use).

Determination of the applicability of fair use "is a mixed question of law and fact." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985). In the instant case, the trial court erred in its interpretation and application of 17 U.S.C. § 107's fair use factors to the facts and made erroneous findings of fact.

## A. The First Factor Weighs in Favor of Fair Use

The trial court erred in its analysis of the first factor, the purpose and character of the use, focusing only on the size of the *Death Dealer* images reproduced on the page and their respective captions, but missing the fact that the images were transformative because they were featured in the context of book cover art included in a thoroughly researched biographical reference containing all 180 book covers featuring Frazetta's cover art.

Most important to the analysis of the first factor is the "transformative" nature of the work, i.e., "whether the new work merely supersede[s] the objects of the

original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. 569, 579.

The first factor examines "whether *and to what extent* the use at issue has a purpose or character different from the original," keeping in mind that "the larger the difference, the more likely the first factor weighs in favor of fair use. The smaller the difference, the less likely." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 529, 143 S. Ct. 1258, 1274-75 (2023) (quoting *Campbell*, 510 U. S., at 579, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (emphasis added).

A use that has a further purpose or different character is said to be "'transformative,'" which characteristic is a matter of greater or lesser degree. *Andy Warhol Found.*, 598 U.S. 508, 529 (citing *Campbell*, 510 U. S., at 579, 114 S. Ct. 1164, 127 L. Ed. 2d 500).

Adding a few changes to a protected work will not necessarily render the use transformative enough to constitute a fair use. "The degree of transformation required to make "transformative" use of an original must go beyond that required to qualify as a derivative." *Andy Warhol Found.,* 598 U.S. 508, 528-29, 143 S. Ct. 1258, 1274-75.

In the instant case, the earlier, historic *Death Dealer* versions were reproduced as originally published in the context as cover art displayed as it was on the book

covers.  The *Death Dealer* versions which Frazetta Properties sells as fine art prints have never been reproduced in Vanguard/Spurlock's *Frazetta Definitive Reference* works. Not even as a comparison between the earlier and the repainted versions. This is because the *Frazetta Definitive Reference* books has only one purpose – to provide historically accurate artifacts (book covers, album covers, movie posters, illustrations, cartoons, etc.) as the images were originally published and no longer publicly available.

The district court's analysis fell short of examining the first factor's scope and concluded the Book's images were larger than necessary and the caption's content "*relays little in the way of education*" [Dkt. 128, p. 28], failing to apply the law correctly. See, *Pacific & S. Co. v. Duncan,* 744 F.2d 1490 (11th Cir. 1984) (Trial court erred in failing to consider four fair use factors, merely concluding that recording and selling portions of televised news clips was not "inherently productive or creative" and thus did not qualify as fair use), reh'g denied en banc 749 F.2d 733 (11th Cir. 1984), cert. denied, 471 U.S. 1004, 105 S. Ct. 1867, 85 L. Ed. 2d 161, 1985 U.S. LEXIS 240 (1985).

The trial court's ruling failed to analyze the importance of the difference between reproducing Frazetta Properties' repainted *Death Dealer* versions versus reproduction of the *Death Dealer* as originally published in the context of faithfully reproduced historical artifacts - out of print book covers featuring *Death Dealer*

images which no longer physically exist and are unavailable to the public.

Although Frazetta Properties' complaint accuses Vanguard/Spurlock of using the Death Dealer book cover art images in bad faith, the contrary is shown to be true – the prior 2008 and 2010 *Definitive Frazetta Reference* editions reproduced far more Frazetta copyright-protected images, always in the historical context in which they were first published, with the blessing (*Licensing Agreement*) of Frazetta Properties. See, e.g., *Peter Letterese and Assocs, Inc. v. World Inst. of Scientology Enterprises*, 533 F.3d 1287, 1312, n. 27 (11th Cir. 2008) (Evidence of bad faith may be a relevant, but not necessarily dispositive, aspect of the first factor), citing *Campbell*, 510 U.S. at 585 & n.18, 114 S. Ct. at 1174 & n.18.

### B.    The Second Factor Weighs in Favor of Fair Use

The district court' analysis of the second factor, the nature of the copyrighted work, properly determined by balancing the protection of the copyright owner's reasonable expectations of the use of its creation with society's need for use of the work in furtherance of education, commentary, and critique.

"Copyright, however, balances the benefits of incentives to create against the costs of restrictions on copying. This balancing act is reflected in the common-law doctrine of fair use, codified in §107, which provides: "[T]he fair use of a copyrighted work, . . . for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research, is not an infringement of copyright." *Andy*

*Warhol Found.,* 598 U.S. 508, 509, 143 S. Ct. 1258, 1262.

The district court dismissed the educative aspect of the Book's reproduction of the historic versions of the *Death Dealer* images without analyzing the purpose for which the images were reproduced -  as part of a reference work providing commentary from artists, art historians, and contemporaries of Frank Frazetta as well as commentary and criticism from the creator himself – Frank Frazetta.

The district court's tunnel vision analysis failed to apply the requirements for determining this factor, resulting in the failure to acknowledge the transformative purpose of the Book's use of the *Death Dealer* images, as historical artifacts, which does not serve the same decorative purpose as Frazetta Properties' repainted *Death Dealer* images.

### C.      The Third Factor is Neutral

The district court examined held that the third factor, the amount and substantiality of the portion used in relation to the copyrighted work as a whole [Dkt. 87-4; Dkt. 87-5], was neutral. [Dkt. 128, pp. 30-31]

The district court erred, however, in finding that the Book reproduced the entire Death Dealer images. The Book contains the *Death Dealer* images as they were initially published, in the context of their placement on the book covers, which used cropped versions of the *Death Dealer* paintings. [Dkt. 87-4; Dkt. 87-5] Additionally, the images are reproduced with the text over the *Death Dealer*

paintings as designed by the publishers. [Dkt. 87-3; Dkt. 87-4]

One who copies a protected work claiming a fair use defense must copy no more than is reasonably necessary to enable the user to effectively achieve the goal of criticism or commentary of the copyrighted work. *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 2003 U.S. App. LEXIS 26451 (7th Cir. 2003) (Room must be allowed for judgment as to what is reasonably necessary; judges must not police criticism with heavy hand), cert. denied, 543 U.S. 816, 125 S. Ct. 54, 160 L. Ed. 2d 23, 2004 U.S. LEXIS 5620 (2004); and see, *Williams & Wilkins Co. v. United States,* 203 Ct. Cl. 74, 89, 487 F.2d 1345, 1353 (1973) (Suggestion that the copying of an entire copyrighted work cannot ever be fair use is an overbroad generalization, unsupported by the decisions).

### D.     The Fourth Factor Weighs in Favor of Fair Use

The fourth fair-use factor, §107(4), "requires courts to assess 'the effect of the use upon the potential market for or value of the copyrighted work.' This Court has described the fourth factor as the 'most important' one." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 555, 143 S. Ct. 1258, 1290 (2023), quoting *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U. S. 539, 566, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985).

In essence, the fourth factor "requires courts to ask whether consumers treat a challenged use "as a market replacement" for a copyrighted work or a market

complement that does not impair demand for the original." *Andy Warhol Foundation*, at 591.

Reading §107 as a whole, then, it supplies courts with a sequential chain of questions about the particular challenged use—starting with its purpose and character (in the first factor) and ending with its effect (in the fourth). There is no double counting here.

Frazetta Properties offered no evidence of an impairment or likelihood of an impairment of the market value of, or ability to license their *Death Dealer* images.

The district court erred in analyzing the fourth factor, the effect of the use upon the potential market for or value of the copyrighted work, as the Book's reproduction of the historic versions of the *Death Dealer* images are displayed as originally published, on covers of paperback novels, and reproduced in the same size as the book covers.

The Book's use clearly does not serve as a substitute for Frazetta Properties' sale of larger, poster-size prints of the *Death Dealer* images nor impair their ability to license the images for commercial use.

The issue of whether widespread use of the historic *Death Dealer* versions in the Book will adversely affect the potential market for Frazetta Properties' *Death Dealer* is completely unlikely, as the later, repainted versions are more colorful and the *Death Dealer V* image contains more, and much better, details.

In sum, when taking all of the fair use factors into consideration as a whole, fair use is clearly demonstrated. See, *Campbell*, 510 U. S. 569, 578 (no factor may "be treated in isolation, one from another.").

**II      The Book is the Third Edition of a Title Governed by the Parties' Publishing Agreement**

The trial court erred in concluding that the Book's reproduction of the historic *Death Dealer* images in the context of book covers is not provided for under the terms of the parties' 2010 "*Frazetta Endorsement and Trademark License Agreement*" ("the Agreement") authorizing Vanguard/Spurlock the right to publish future editions of the book entitled "*The Definitive Frazetta Reference*" in perpetuity, with no limits on updating the information, revising the text, replacing images, or re-designing the work as Vanguard/Spurlock "sees fit." [Dkt. 87-2, p. 18; Sec. 4 (A)].

Vanguard/Spurlock published, co-authored, and co-edited the 2008 edition, entitled "*The Definitive Frazetta Reference*" and the 2010 edition, now entitled "*Frazetta – the Definitive Reference*," and authored and edited the 2022 edition, entitled "*Frazetta Book Cover Art – Definitive Reference*," omitting much of the prior lists of works and oft-reprinted images but now reproducing 180 Frazetta book cover art in the context of the original book covers. The 2008 and 2010 editions reproduced 46 book covers featuring Frazetta paintings as cover art.

The 2008 and 2010 editions of *Frazetta Definitive Reference* reproduced

Frazetta Properties' copyright registered *Dark Kingdom, Defender, Death Dealer II, Death Dealer IV*, and *Death Dealer VI* images.

The 2022 edition reproduced Frazetta Properties' copyright registered *Death Dealer II, Death Dealer III, Death Dealer IV,* and *Death Dealer VI* images. The 2010 and 2022 editions of the *Frazetta Definitive Reference* are part of the record and demonstrate that permission to reproduce the images in their initially published contexts was clearly granted by Frazetta Properties.

## CONCLUSION

For the foregoing reasons, this Court should reverse and remand for further proceedings.

Date: November 18, 2025

LEIGH M. WILLIAMS LAW OFFICE, PLLC

By: *Leigh Williams*
    _____
Leigh M. Williams
Florida Bar No. 624543
1701 W. Kansas Ave.
Midland, Texas 79701
Tel. (432) 901-2141
Email: leigh@williamslegal.org
*Attorneys for Appellants Vanguard Productions, LLC and J. David Spurlock*

**Certificate of Compliance With Type-Volume Limit,**
**Typeface Requirements, and Type-Style Requirements**

I certify that, pursuant to Federal Rules of Appellate Procedure 32(a)(7)(B),

the foregoing brief is proportionally spaced, has a typeface of 14 point and contains

7677 words, excluding the parts of the brief exempted by Federal Rule of Appellate

Procedure 32(f) and Eleventh Circuit Rule 32-4.

Dated: November 18, 2025

LEIGH M. WILLIAMS LAW OFFICE, PLLC

By: *Leigh Williams*
_____
Leigh M. Williams
Florida Bar No. 624543
1701 W. Kansas Ave.
Midland, Texas 79701
Tel. (432) 901-2141
Email: leigh@williamslegal.org
*Attorney for Appellants Vanguard Productions, LLC and Jesse David Spurlock*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served upon counsel below for Appellee Frazetta Properties, LLC via e-service this

18th day of November 2025.

Jack W. Merritt, Esq.
MERRITT LAW, PA
690 S. Tamiami Trail
Osprey, Florida 34229
e-mail: office@merrittlaw.net

/s/: *Leigh Williams*
_____
Leigh McMillan Williams