# No. 25-13414

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

FRAZETTA PROPERTIES, LLC,

*Plaintiff-Appellee,*

v.

VANGUARD PRODUCTIONS, LLC and JESSE DAVID SPURLOCK,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Middle District of Florida

No. 8:22-cv-00581-WFJ-AEP

## APPELLANTS' REPLY BRIEF

LEIGH M. WILLIAMS LAW OFFICE, PLLC
Leigh M. Williams
Florida Bar No. 624543
1701 W. Kansas Ave.
Midland, Texas 79701
Tel. (432) 901-2141
Email: leigh@williamslegal.org

Attorney for Vanguard Productions, LLC and
Jesse David Spurlock, Appellants

**TABLE OF CONTENTS**

|  |  | Page |
| --- | --- | --- |
| Table of Contents | | i |
| I. | Vanguard Has a Limited Right to Reproduce Copyrighted Death Dealer Images | 1 |
| II. | The Fair Use Exception Applies to the Definitive Reference | 6 |
| III. | The January 13, 2015 "Dark Horse Letter" | 9 |
| IV. | Conclusion | 12 |
| Certificate Of Compliance | | |
| Certificate Of Service | | |

Appellants VANGUARD PRODUCTIONS, LLC and JESSE DAVID SPURLOCK, pursuant to FRAP 28(c) and 11th Cir. R. 28-1, reply to Appellee Frazetta Properties, LLC's Response Brief [Dkt. 42] concerning the record facts only, as follows:

## I. VANGUARD HAS A LIMITED RIGHT TO REPRODUCE COPYRIGHTED DEATH DEALER IMAGES

1. The parties entered into the Frazetta Trademark and Endorsement Agreement [Dkt. 227, pp. 6] ("Endorsement Agreement"), subpart B of the parties' 2010 Settlement Agreement [Dkt. 87-2, 2010 Settlement Agreement with subparts A and B] resolving litigation between Frank Frazetta, J. David Spurlock and his publishing company, dba Vanguard Productions, arising from Vanguard/Spurlock's 2008 publication of the *Definitive Reference* and provided terms and conditions for publication of future editions of the *Definitive Reference*.

2. Frank Frazetta, through his attorneys, granted Vanguard the authority to "*update, revise text, replace images, re-design and publish this Frazetta Book as Licensee sees fit*" to improve future editions of the *Definitive Reference* by continuing to add accurate information, history, and commentary by Mr. Frazetta's peers, in a professional, quality controlled, aesthetically pleasing work intended to supplant the poor quality "checklists" or "indexes" cobbled together by enthusiastic fans and inexperienced small publishers, as is commonly done by fans of popular science-fiction and/or comics artists. [Dkt. 227, p. 9]

3.      The Endorsement Agreement [Dkt. 87-2, pp. 17-23] acknowledged that Ellie Frazetta signed the 2000 contract with the original primary editor J. A. Bond to publish the *Definitive Reference* [Dkt. 87-1, p. 22], and recognized Frank Frazetta's documented endorsement of the *Definitive Reference* [Dkt. 87-1, p. 28], and formally provided Vanguard with authority to advertise *Definitive Reference* as endorsed by Frank Frazetta.

4.      Attorneys represented Frank Frazetta's interests at mediation and during the negotiation and drafting of the wording of the Endorsement Agreement, and the interests of Frazetta Properties, the entity which holds Mr. Frazetta's tangible and intangible property and in that capacity, was designated to carry out Mr. Frazetta's part of the publishing duties under subparts A and B of the Settlement Agreement. [Dkt. 227, p. 8] Frazetta Properties' attorneys negotiated the drafting of the language, terms, and conditions of the Endorsement Agreement, which did not include J. A. Bond, the previous primary editor of the 2008 *Definitive Reference*.

5.      Frazetta Properties' interests were also represented by Rob Pistella, Frazetta Properties' manager at the time, who was present during the negotiation and drafting of the Settlement Agreement and its subparts. [Dkt. 227, p. 8]

6.      Frank Frazetta's adult children, Holly Frazetta, Heidi Frazetta, and William Frazetta signed the Endorsement Agreement in their capacity as members of Frazetta Properties. [Dkt. 227, p. 8]

7. The Endorsement Agreement, in addition to providing for publication of two volumes of sketchbooks of Frank Frazetta's unpublished drawings and four volumes of Frazetta artwork in the public domain, contained broad authority for Vanguard/Spurlock's publication of future editions of the *Definitive Reference*. [Dkt. 227, p. 7-8, citing Dkt. 87-2, p. 18].

8. Frank Frazetta and Ellie Frazetta wanted Mr. Spurlock and Vanguard to publish the *Definitive Reference*, shown by Ellie Frazetta's specific instructions as to the permissible size of an image and the context in which an image was displayed in terms of a royalty-free "fair use" status for the reference work. [Dkt. 227, p. 165, citing Dkt. 87-2, pp. 27].

9. Mr. Spurlock was an expert on the life and art of Frank Frazetta long before Vanguard published the *Frazetta Definitive Reference* in 2008, having served as a consultant on the 2003 full-length Frank Frazetta documentary "Painting With Fire;" served as an expert witness on the art of Frank Frazetta in the lawsuit styled *Conan Properties International, LLC vs. ARH Studios, Inc.*, Case No. CV16-05284 CBM SK in the Central District Court of California, in which matter his deposition was taken; and Frazetta Properties had previously paid him to appraise and draft the appraisal report of the value of Frank Frazetta's artwork that Frazetta Properties used as part of their submission to underwriters to purchase an insurance policy for their multi-million dollar collection of Frank Frazetta's art. [Dkt. 241-1, p. 64, ¶ 10].

10.     The subject matter of the *Definitive Reference* appeals to a small niche market and thus is not a profitable project. [Dkt. 227, p. 10-11, and see, Dkt. 162, Aff. Spurlock, concerning the Book's profits]. Publication and sales of future editions of the *Definitive Reference* provided in the Endorsement Agreement anticipated inclusion of a substantial percentage of new content to drive sales of a new edition, otherwise, the *Definitive Reference*'s purpose cannot be realized and the benefit conferred on Vanguard/Spurlock would be vitiated. All three editions of the *Definitive Reference* (2008, 2010, and 2015) display "Frazetta" in large type at the top of the front covers and "*Definitive Reference*" placed at the bottom.

11.     The 2008 and 2010 editions of the *Definitive Reference* contain a substantial chapter on Frank Frazetta's book cover art and reproduced some of his art as featured on book covers, but the 2022 edition reproduced all of the book covers featuring Frazetta's art, a proper purpose of the *Definitive Reference* and provided for under the terms and conditions of the Endorsement Agreement.

12.     Ellie Frazetta, Frank Frazetta's wife and business manager, personally asked the original author, James A. Bond, to work with Mr. Spurlock and Vanguard Productions to publish the *Frazetta Definitive Reference*. (See, Introduction and Afterward to the 2010 ed.).

13.     Mr. Spurlock worked closely with Ellie Frazetta on the *Definitive Reference*, demonstrated by her instructions, made in her capacity as Frank

Frazetta's business manager, for reproducing Frazetta's artwork, requiring images be displayed in the context of the art as published, not just the image itself. Her instructions appear on multiple galley pages of the book, some in her own handwriting. [See, Dkt. 229-2]

14. Ellie Frazetta's instructions to Vanguard/Spurlock in the galley pages of the 2008 edition of the *Definitive Reference* [Dkt. 229-2] as to the wording of the text and the proper display of Frank Frazetta's art clearly supports Vanguard's contention that copyrighted images may be reproduced as long as they are displayed in the context of the image as originally published, i.e., the cover of a comic book, magazine, book cover. [Dkt. 229-2, pp. 24, 28, 29, 30, 34, 35, 36, 37, 38, 41-45 (instructing the removal of images not displayed in the context in which it was originally published), and p. 46 (directing the current Dedication be replaced with one to Frank Frazetta's fans instead of Robert E, Howard, author of the Conan fantasy novels that made Frank Frazetta famous).

15. Since the parties' entry into the 2010 Endorsement Agreement, Frazetta Properties consistently engaged in the pattern and practice of permitting Vanguard to reproduce their copyrighted *Death Dealer* images. This custom was not limited to Vanguard's 2008 and 2010 *Definitive Reference* but is also seen in Vanguard's 2020 Fantastic Paintings of Frazetta, containing five pages of *Death Dealer* images, two of which are full page and Vanguard's 2014 Frazetta Sketchbook Volume II,

containing *Death Dealer, Death Dealer IV*, and *Death Dealer V* [Dkt. 241-2, p. 72].

16. After the court's [Dkt. 128] Order ruling in favor of Frazetta Properties on their copyright infringement claim, the court entered the [Dkt. 166] Endorsed Order directed Frazetta Properties to file certified copies of registration application, registration certificate, and deposit copies submitted to the U.S. Copyright Office for *Death Dealer II* and *Death Dealer V*.

## II. THE FAIR USE EXCEPTION APPLIES TO THE *DEFINITIVE REFERENCE*

17. No author or publisher aside from Vanguard has ever compiled or published a complete and accurate catalogue of Frank Frazetta's book cover art with historical facts and commentary, perhaps because such a niche market reference work nets meager profit. Vanguard/Spurlock's run netted a mere $22,405.05 in profits. [Dkt. 162] Affidavit of J. David Spurlock concerning profits].

18. The fourth factor of the fair use analysis examines market effect. Frazetta Properties admitted that they had no licensing agreements for *Death Dealer II* or *Death Dealer V*. [See, Dkt. 287-1, number 10 of Vanguard/Spurlock's Requests for Production [Dkt. 287-1, p. 129.

19. The 2022 *Definitive Reference* is clearly a reference work - *Frazetta Book Cover Art - Definitive Reference* is the only catalogue and survey of Frank Frazetta's book cover art in an annotated academic format including facts, data, and commentary on book covers unavailable from any source, including the internet or

other compendium. [Dkt. 288, p. 134].

20. *Frazetta Book Cover Art - Definitive Reference* required approximately two years to develop and research each of the 159 book covers featuring Frank Frazetta's cover art, all of which are out-of-print and held in private collections, requiring identification, location, and contacting each private collector to request and obtain access to their collections to take high-resolution scans of the book's front and back covers and spines using a professional quality scanner or the use of professional-quality photography equipment when photography was required. [Dkt. 288, p. 135].

21. *Frazetta Book Cover Art - Definitive Reference* is the only source to view images on book covers which no longer exist in their originally painted form. [Dkt. 288, p. 137]. Vanguard's books on Frank Frazetta's art, including *Frazetta Book Cover Art - Definitive Reference,* are used as reference guides by art auction houses, academes, historians, and in art schools in the United States, United Kingdom and held in other countries' university library systems in addition to being sold at The Frazetta Museum in East Stroudsburg, Pennsylvania, originally built and operated by Frank Frazetta, Sr. and his wife, the late Eleanor ("Ellie") Frazetta, manager of Frank Frazetta's business. The Museum is now owned and operated by Frazetta Properties member Frank Frazetta, Jr. [Dkt. 288, p. 137].

22. The late 1980s/early 1990s *Death Dealer* series of books published by

TOR Books featured in the 2022 *Definitive Reference* are true and correct reproductions of TOR Books out-of-print book covers and differ from Frazetta Properties' *Death Dealer II*. [Dkt. 227, p. 5] (Comparing Frazetta Properties' Deposit Copy [Dkt. 175-1, pp. 1-2] to the *Death Dealer II* image reproduced in the *Definitive Reference* [Dkt. 67-1, p. 68] in the context of the 1989 book cover.

23.     Frazetta Properties' *Death Dealer V* image is not the same as the *Death Dealer V* book cover art reproduced in the Book. Compare Frazetta Properties' USCO Deposit Copy [Dkt. 175-1, pp. 5-6] to the *Death Dealer V* book cover image in the [Dkt. 67-1, p.71] 2022 *Definitive Reference*.

24.     The importance of the first versions of the *Death Dealer* images is grounded upon the unavailability for professionals as well as the public to view these images in their original, no-longer existent form, a valuable insight into the development or change in perspective of an artist for his subject.

25.     The original *Death Dealer V* painting no longer exists, despite the descriptions of Frank Frazetta's art as "original art" on Frazetta Girls, LLC's website [Dkt. 83-1], seller of reproductions of Frank Frazetta's copyright registered *Death Dealer* images as poster art. Their images are reproductions of original Frank Frazetta art but are not the original versions of *Death Dealer II* and *Death Dealer V* published by TOR Books in 1989 and 1990 on book covers. [Dkt. 227, p. 5].

26.     Frank Frazetta added many new details to *Death Dealer V* several years

after its initial publication as book cover art. The re-painted *Death Dealer V* image was copyright registered by Frazetta Properties in 2009 as the 1990 image and is marketed to the public in various merchandise forms sold online by Frazetta Girls, LLC. [Dkt. 83-1].

27. It is abundantly clear that the public is buying the more colorful and detailed *Death Dealer* versions on the Frazetta Girls' website, NOT the darker original versions which are sold nowhere and reproduced ONLY in Vanguard/Spurlock's *Definitive Reference*.

### III.   THE JANUARY 13, 2015 "DARK HORSE LETTER"

28. Vanguard/Spurlock's [Dkt. 176] Second Renewed Motion for Reconsideration of the Order [Dkt. 128] raised the issue of whether material record evidence in the form of the January 13, 2015 letter [Dkt. 95-4] addressed to Frank Frazetta, Jr. and publishers Dark Horse Comics and Diamond Comics Distributors [Dkt. 176, p. 38], believed at the time to have been signed by David Spurlock and Frazetta Properties manager/members William Frazetta, Holly Jean Frazetta Taylor, and Heidi Lee (Frazetta) Grabin acknowledging Vanguard/Spurlock's authorization to reproduce images copyright registered to Frazetta Properties precluded summary judgment in their favor. [Dkt. 176, p. 37]

29. Frazetta Properties' [Dkt. 183] Response to the Second Renewed Motion [Dkt. 176] for Reconsideration of the Order [Dkt. 128] argued the Dark

Horse Letter was not a meeting of the minds but a mere expediency for Frazetta Properties members who signed the letter to avoid more litigation. [Dkt. 183, p. 49]

30. The court's [Dkt. 184] Endorsed Order granted, in part, Vanguard/Spurlock's [Dkt. 176] Second Motion for Reconsideration, and on September 6, 2024, the court's [Dkt. 188] Amended Case Management and Scheduling Order reopened discovery up to and including February 7, 2025.

31. Vanguard/Spurlock's [Dkt. 192] Rule 26 Disclosure listed Frank Frazetta, now a member of Frazetta Properties, as having knowledge of the 2015 letter addressed to him, Dark Horse Comics, and Diamond Comics Distributors (the "Dark Horse Letter").

32. Frazetta Properties filed their [Dkt. 218] Motion demonstrating that the Dark Horse Letter [Dkt. 95-4] had cut and paste signatures of Frazetta Properties manager/members Holly Frazetta, Heidi Frazetta, and William Frazetta.

33. Harold McFarland, an expert graphologist, filed his [Dkts. 219; 219-1] Affidavit demonstrating his conclusion that the members' signatures were cut-and-pastes of the signatures from the parties' 2010 Settlement Agreement, and the Affidavits of Heidi Frazetta [Dkt. 220], Holly Frazetta [Dkt. 221]; William Frazetta [Dkt. 222], and corporate designee Joseph Weber [Dkt. 223] asserted that they had never seen the Dark Horse Letter nor knew of its existence.

34. Mr. Spurlock recalled that William Frazetta, member of Frazetta

Properties, jointly drafted the wording at William Frazetta's request on behalf of Frazetta Properties, involved in a dispute with publisher Dark Horse Comics concerning publication of a book featuring the art of Frank Frazetta by Frank Frazetta, Jr., who was not a member of Frazetta Properties at the time, and Frazetta Properties considered this a violation of the parties' 2010 Endorsement Agreement. Mr. Spurlock understood that the Dark Horse Letter was sent. [Dkt. 227, ¶ 23]

35. The January 14, 2015 email attaching the Dark Horse Letter, together with the email's metadata [Dkt. 224-1] shows that the Letter was created on January 13, 2015 and was emailed to William Frazetta by Mr. Spurlock.

36. Joseph Weber, Frazetta Properties' corporate representative, attested to a bizarre set of allegations [Dkt. 223] which made no sense and had nothing to do with the Dark Horse letter and were additionally completely untrue and thus probative of nothing.

37. After Frazetta Properties disputed the Dark Horse Letter in mid-February 2025, Mr. Spurlock began a thorough search of Vanguard's business records, including documents, texts, and social media posts concerning the Letter and the signatures on it. Several weeks later, he located the delivery email to William Frazetta with the Dark Horse Letter. [Dkt. 241-1, ¶¶ 11-12].

38. After reviewing the email, Mr. Spurlock recalled that he digitally inserted the members' signatures because he understood that William Frazetta

approved the content of the Letter on behalf of Frazetta Properties, and his insertion of the members' signatures was intended to serve as a convenience to Frazetta Properties' members. [Dkt. 241-1, ¶¶ 15-16].

39.     The 2015 Dark Horse Letter was an unfortunate event but did nothing to affect the issue of license created by the Endorsement Agreement, subpart B of the 2010 Settlement Agreement, nor does it affect the custom, pattern and practice of Frazetta Properties remaining silent when Vanguard/Spurlock reproduced copyrighted *Death Dealer* images.

## IV.     CONCLUSION

For the foregoing reasons, Appellants respectfully request the trial court's ruling be reversed and for all other relief, including attorney fees and costs, and all other relief to which they may be entitled in the interests of justice.

DATED: April 9, 2026

Respectfully submitted,

LEIGH M. WILLIAMS LAW OFFICE, PLLC

By: /s/_____
Leigh M. Williams
Florida Bar No. 624543
1701 W. Kansas Ave.
Midland, Texas 79701
Tel. (432) 901-2141
Email: leigh@williamslegal.org

## Certificate of Compliance With Type-Volume Limit,
## <u>Typeface Requirements, and Type-Style Requirements</u>

I certify that pursuant to FRAP 32(a)(7)(B)(ii) and 11th Cir. Loc. R. 32-4, the foregoing reply brief is proportionally spaced in 14 point typeface and contains 2,692 words, excluding the parts exempted by FRAP 32(f).

Dated: April 9, 2026

LEIGH M. WILLIAMS LAW OFFICE, PLLC

By: _____

Leigh M. Williams
Florida Bar No. 624543
1701 W. Kansas Ave.
Midland, Texas 79701
Tel. (432) 901-2141
Email: leigh@williamslegal.org
*Attorney for Vanguard Productions, LLC and
Jesse David Spurlock, Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that a true and correct copy of the foregoing was served upon counsel for Frazetta Properties, LLC below, via e-service this 9th day of April 2026.

Jack W. Merritt, Esq.
MERRITT LAW, PA
690 S. Tamiami Trail
Osprey, Florida 34229
e-mail: office@merrittlaw.net

/s/: _____
Leigh McMillan Williams